## UNITED STATES DISTRICT COURT
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | **Criminal No: 13-cr-134-05 (BAH)** |
| **v.** | * | |
| | * | |
| **ANTONIO MORENO-MEMBACHE,** | * | |
| **Defendant** | | |

****** 

# SENTENCING MEMORANDUM

Antonio Moreno-Membache pleaded guilty pursuant to Fed. R. Crim. Proc. 11(c)(1)(C),
to a conspiracy to knowingly and intentionally distribute and possess with intent to distribute five
kilograms or more of cocaine and 100 kilograms or more of marijuana. The offense was charged
pursuant to 46 U.S.C. §§ 70503 and 70506(b) ("MDLEA"), which makes it a federal offense when
such a conspiracy involves a vessel subject to the jurisdiction of the United States. Plea Agreement
at 1 (ECF 191). Pursuant to Rule 11(c)(4), the parties agreed that this Honorable Court would
impose a sentence of 120 months imprisonment unless the Court found that the Safety Valve was
applicable to the offense. *Id.* at 2, ¶7. On March 21, 2016, this Court ruled that "safety-valve relief
is unavailable for defendants convicted under the substantive and conspiracy provisions of the
MDLEA." Memorandum Opinion at 2 (ECF 203). Thus, unless this Court were to reject the plea
agreement, it must sentence Mr. Moreno-Membache to 120 months imprisonment.[1]

### A.     Nature and Circumstances of the Offense

On June 19, 2012, the United States Coast Guard intercepted a go-fast vessel named the
"Mistby" with Colombian registration. Stipulated Statement of Facts (ECF 192). The persons on
board allegedly jettisoned the cargo into the high seas. The Coast Guard later recovered from the

---

[1] While a transcript of the hearing is not available, counsel's notes reflect that this Court
accepted the plea agreement at Mr. Moreno's guilty plea hearing on January 20, 2016.

high seas what it believed to be the cargo dumped overboard by the Mitsby crew, which included cocaine and marijuana bound from Colombia to Panama. *Id*. While the Government contended that it could prove additional facts beyond a reasonable doubt, Mr. Moreno did not stipulate to those facts. In his objections to the PSR, he has set out with particularity his factual objections.

With respect to the drug quantity, Mr. Moreno contended that the amount of controlled substances involved in the conspiracy that was reasonably foreseeable to him was five kilograms or more of cocaine and 50 kilograms or more of marijuana. *Id.*

### 1.   Mr. Moreno Played a Minimal Role

At the plea hearing, Mr. Moreno explained to the Court that he was minimally involved in the conspiracy. He admitted that being aware that his brother, Andres Moreno-Membache and others were preparing to launch the Mistby loaded with controlled substances, he agreed to help him to update expired registration documents for the Mistby and in other ways. His participation in the offense was minimal. He did not own the drugs. He did not get paid for his assistance to his brother Andres. In comparison, the crew members, by their own admission were paid millions of Colombian pesos for their participation in the *Mitsby* shipment; Defendant Chang Rendon was allegedly also paid millions of pesos.[2] *See* U.S.S.G. § 3B1.2, comment. n. 3(C).

### 2.   Factual Allegations Beyond Facts Stipulated

Mr. Moreno objects to the recitation of facts in the government's sentencing memorandum and the Presentence Report. The PSR essentially adopted wholesale the government's allegations. However, in the face of particularized factual objections such as the ones presented by Mr. Moreno

---

[2]   In 2012, one dollar equaled approximately $3,070 pesos. *See* http://www.x-rates.com/historical/?from=COP&amount=1&date=2016-05-28

2

in his objections to the Presentence Report, only the Court (not the Probation Officer) can resolve the disputes.  *See, e.g., United States v. Childress*, 58 F.3d 693, 722 (D.C. Cir. 1995) ("in order to ensure careful adherence to these limitations on co-conspiratorial liability in Guidelines sentencing, the district court *itself* must make particularized findings about both the scope of the agreement that the defendant entered into and the basis on which it finds the amount of drugs reasonably foreseeable to that individual defendant").

In support of its arguments, the government selectively relies on multiple contradictory statements given by some of the men who were arrested on board the Mistby, whose credibility is suspect because they are seeking to curry favor with the government in order to reduce their sentences.  These men have also been questioned multiple times beginning in 2012 but never previously made the allegations recently made about Mr.  Moreno's possession of a firearm nor about his involvement in reviewing nautical charts.  Indeed, in earlier questioning these cooperators did not even place Mr.  Moreno at any conspiratorial meeting.  Also, the story about Mr.  Moreno's possession of a firearm is nonsensical.  According to one man, the revolver belonged to Andres but on one occasion not referenced to any particular date, Mr.  Moreno showed the gun for absolutely no reason – not to threaten or show authority or for any other reasons.  The other man claimed that while he had not seen the gun, he could tell Mr.  Moreno was wearing it under his shirt.  Neither man had previously mentioned this event despite multiple debriefs dating to 2012.  Moreover, some of the allegations are contradicted by the intercepted phone calls.  For example, one man's claim that Mr. Moreno was present at the launch of the Mistby is contradicted by an intercepted phone call where Mosquera is overheard telling Mr.  Moreno the time the Mistby launched, a conversation that would make no sense if Mr. Moreno had been present at the launch.

Mr. Moreno did not possess a firearm at any time and did not direct anyone. At the time of his arrest, no firearms were recovered from him or from his belongings. He has never been charged or found with firearms. Indeed, the allegations presented by the government in two reports that it produced for the first time in April 2016, nearly four years after the June 2012 capture of the Mistby and after both cooperators had each previously been interviewed multiple times without having once mentioned the allegations are simply not credible.

At the same time, the government ignores the statements of others who exculpate Mr. Moreno. The government also selectively and mistakenly interprets the intercepted communications.

In addition, pursuant to Rule 32(i)(3)(B), FED. R. CRIM. PROC., the Court does not need to resolve the disputed facts as they will not affect the sentence in light of the provisions of Rule 11(c)(1)(C) and the applicable mandatory minimum. Any resolution of the disputed facts by the Court is not necessary under the circumstances.

## 2.    Drug Quantity

In discovery, the government produced two separate lab reports and one drug property report ("DEA-7"), attached as Ex. 1 (Bates # CR0001804-1806) and 2. In one lab test, 9 out of 10 bricks tested negative for cocaine. In the other lab test, 27 of 220 bricks tested positive for cocaine. All but 6 grams of the cocaine was destroyed by the DEA shortly after the testing.

The DEA-7 reflects that the Coast Guard provided ten bricks of suspected cocaine to DEA agents, who processed it, secured it in a vault and transferred it to a DEA lab on July 9, 2012. DEA-7, Ex. 1. The lab report corresponding to these ten bricks reflect that only one of the bricks tested positive for cocaine hydrochloride. Ex. 1, Lab Report.

On a separate occasion, the same DEA lab tested 27 of 220 bricks with the result that all 27 tested positive for cocaine.  Ex.  2.  Of those, it appears that DEA destroyed 210.8 kilograms of cocaine and preserved 6 grams.  *Id.*

The test results obtained in the two separate lab reports are inconsistent with proper lab procedures, which would require random selection of drug samples.

### B.      History and Characteristics of the Defendant

#### 1.      Poverty and Limited Education

Mr.  Moreno is forty-one years old.  PSR at ¶43.  He is the oldest of 16 children born to a peasant family in a remote and impoverished area of Colombia.  PSR at ¶44.  As the oldest child, he dropped out of school after only three years of elementary education in order to help his father farm and fish to provide for the family.  *Id.*  While he has been taking GED classes at the D.C. Jail, he believes that he did not pass the mathematics portion of the test that he recently took.

#### 2.      Long-Standing Employment History

For his entire life, until he was arrested and extradited to the United States, he has continued to help support his parents and his siblings.  He was a member of a group of local fishermen, who made their living on the water.  He also did other work, including selling water and other cold drinks on the beach.

His mother, María Hermes Membache  has written a letter explaining that Antonio Moreno has always helped to support her and her husband (his father), his siblings and this children.  She explains that she lives in the country and that the only thing she and her husband know is farming.

> My son Antonio is the oldest of my sixteen children and for that reason he had to work, farming and fishing to help with housing expenses and the care of his siblings.  It is sad that I was not able to give my son a better life and education but in my impoverished condition, it was impossible to do.  But thanks to the help that he provided to us and to his younger siblings and his children, they have been able to go to school but in his absence, it is much more difficult to accomplish.
>
> Your Honor, I ask you from the hear to understand my pain as a mother and my anguish at not knowing if I will ever see my son as each day it is more difficult to wait for him because of my age and my illness as a diabetic.  Please consider returning my son, father, brother and spouse who is so important in all our lives.  Please excuse the fact that I wrote this letter with my granddaughter's help, but they are my most sincere words that I express to you with the utmost respect.

Letter from mother, Ex.  3.

### 3.      Stable Family Life

Mr.  Moreno was involved in a common law relationship for 19 years and has six children from that union, ages 21 to 13.  PSR at ¶46.  His common-law wife now lives in Medellin and is a domestic worker.  He always took care of his children as best he could.  They are all now employed or in school.  His oldest daughter is a housewife.  His oldest son is in the Colombian Army.  His four youngest children are students, either living with their mother or with his parents.

After he separated from his common-law wife, he began a relationship with Sthefania Ramírez Aguirre, who is a law student.  No children were born of that union.  She has also written a letter on his behalf:

> I can say that he is a person with very good values, a rural man, hard working farmer and fisherman, excellent father and life partner.  For me, for his children and for his family, we have missed him dearly because he is our mainstay, the person upon whom we depend economically and emotionally; as he is the oldest of 16 siblings, has six children, four of whom are minors, a grandchild and me.

We have suffered much since the day he was detained because I was left alone without his help and without the least possibility of seeing him as he is so far away from our homeland and our financial situation and that of his faimly does not allow us to visit.  Your Honor, as a citizen and a law student, I understand the power and the value of laws and norms but I believe that we all deserve another chance.  Please understand that in our country of Colombia for many years we all face a grave crisis as a result of the internal conflict where we are all in one way or another vulnerable.

Your Honor, I wish with all my heart to have Jesús Antonio back and with him our joy and that way able to achieve our dreams, one of which is to marry and receive God's blessings.  This has been a terrible experience that neither he, his family nor I wish to repeat. With your understanding, we hope it will soon end.

Letter, Ex.  4.

### 4.     No Criminal History

He has no criminal history.  PSR at ¶40-42.

### 5.     Post-Offense Rehabilitation

Since his arrest and arrival at the D.C. Jail, Mr. Moreno has attempted to do all he can to rehabilitate himself.   He completed an anger management course on June 29, 2105, and a mental health support group program on January 12, 2015.  PSR at ¶ 54.  He has also been attending Alcoholics Anonymous and Narcotics Anonymous classes at the DC Jail because he "just wants to learn."  PSR at ¶ 54.

He has also been taking G.E.D. classes regularly.   PSR at ¶ 55.  Although with his limited education, it is not clear that he will be able to pass the necessary examinations to obtain a high school equivalency diploma.

Mr.  Moreno has also been attending religious services.  Pastor Silvestre Simons writes that Mr.  Moreno has been attending bi-weekly services and "experiencing repentance in his life." Ex.

5. He has been baptized. *Id.* Chaplain Saul García also wrote a letter on Mr. Moreno's behalf. Ex.

6. Chaplain García writes that he has

> evaluated Moreno about the teachings, and I can confirm that he is
> learning many good lessons about what God demands. I can say that
> he is learning here what he was not taught when he was growing up
> in his country; therefore, he grew up not knowing right from wrong
> making many mistakes in his life. What he is learning now will help
> him . . . to have a better future. To do what pleases God is not
> learned overnight, but he is trying.

*Id.*

### C.    Guidelines Calculation

While the guideline calculation will not play a part in the 11(c)(1)(C) sentence to be imposed,

Mr. Moreno maintains that the correct application of the guidelines is as follows. The base offense

level should be Offense Level 30 (5 kilograms of cocaine as set forth in the Stipulated Statement of

Facts). Indeed, it is not clear that any drug quantity should be considered in calculating the offense

level as part of relevant conduct under U.S.S.G. § 2D1.1 as none of the drugs were to be imported

into the United States. *See, e.g. United States v. Azeem,* 946 F.2d 13, 16 (2d Cir.1991) (drugs

intended for distribution in foreign countries should not be considered relevant conduct under §

1B1.3).

He should receive a mitigating role as he did not own the drugs, did not receive payment for

his participation, and was plainly among the least culpable of the participants. *See* U.S.S.G. § 3B1.1.

Thus, his adjusted offense level should be 26. With a 2-level reduction for acceptance of

responsibility, his total offense level should be 24. With a criminal history I, his sentencing range

would be 51 to 63 months.

A number of mitigating circumstances relating to Mr. Moreno's personal characteristics and his limited role in the offense will not be taken into consideration in light of the mandatory minimum sentence and the Rule 11(c)(1)(C) agreement. The need to avoid unwarranted disparity pursuant to 18 U.S.C. § 3553(a)(6) also will not be taken into consideration. *Compare, e.g., United States v. Ballestas*, 795 F.3d 138, 142 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 1229 (2016) (defendant was sentenced to imprisonment for 64 months in a case where between "May 2008 and September 2010, law enforcement agents seized or attempted to seize eight of the organization's cocaine shipments. Intercepted communications linked Ballestas to at least four of the seized shipments, which together accounted for thousands of kilograms of seized cocaine).[3]

## CONCLUSION

For all the reasons stated, Mr. Moreno-Membache respectfully requests that the Court accept the Rule 11(c)(1)(C) plea and sentence him to the agreed-upon sentence.

Respectfully submitted,

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**
7166 Mink Hollow Road
Highland, MD 20777
(240) 472-3391; (301) 854-0076 (fax)

---

[3] Judgment in *Ballestas* is found at ECF 128 in Case No. 1:11-cr-00050-6 (RWR).

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Sentencing Memorandum was  served on all counsel of record via email this 28th day of May, 2016.


/s/ *Carmen D.  Hernandez*
**Carmen D.  Hernandez**